FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
2013 JUL -5 PM 12: 19
WILLIAM W. BLEVINS
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

**ROBERT "BOB" NAJOR**

Plaintiff

VERSUS

**PLAQUEMINES CLAY CO., LLC**
**AND**
**HAI NGUYEN**

Defendants

CIVIL ACTION

NO: **13-5000**

SECTION: **SECT. J MAG. 2**

# COMPLAINT

**NOW INTO COURT**, through undersigned counsel comes Robert "Bob" Najor, who complains of the Defendants Plaquemines Clay Co., LLC and Mr. Hai Nguyen:

## THE NATURE OF CLAIM

1.

This is a claim to recover losses and damages sustained by Plaintiff Robert "Bob" Najor ("Mr. Najor") as a result of the Defendants Plaquemines Clay Co., LLC ("PCC") and Hai Nguyen ("Mr. Nguyen"). Plaintiff is attempting to seek payment from the Borrowers on account of a debt, represented by a Promissory Note.

The due date on the Promissory Note has passed and not a single payment has been made to date. The Defendants are liable unto Plaintiff for all damages occasioned by their bad faith. Mr. Najor also seeks a judgment from this Court appointing him as "Vice-Chairman" with all authority to act on behalf of PCC.

Fee 400
✓ Process
x Dktd
CtRmDep
Doc. No.

## THE PARTIES

2.

Robert "Bob" Najor ("Plaintiff"), is a citizen of the State of Alabama.

3.

Named defendants *in solido* are:

(a) Plaquemines Clay Co., LLC, (PCC) is a limited liability company, professed to be organized under the laws of the State of Louisiana. And

(b) Mr. Hai Nguyen ("Mr. Nguyen") is a person of full age and majority, domiciled in the Parish of Orleans, State of Louisiana. According to the Louisiana Secretary of State, Mr. Nguyen is the manager and sole member of PCC.

## JURISDICTION AND VENUE

4.

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, as this is a civil action between citizens of different states, Alabama and Louisiana, and the amount in controversy exceeds $75,000, exclusive of interests and costs. Plaintiff further respectfully invokes the ancillary and/or pendent jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

5.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a) because a substantial part of the events giving rise to the claims occurred within this judicial district.

6.

Please take notice that this debt is being collected pursuant to the Fair Debt Collection Practices Act, 15 U. S. C. § 1692, et seq. Any information obtained will be used for that purpose.

ALLEGATIONS AS TO THE MERITS FOR THE PROMISSORY NOTE

7.

Plaintiff, Robert "Bob" Najor, is the good faith holder and owner in due course, for valuable consideration and before maturity of a certain Promissory Note, made and subscribed by PCC and executed by Mr. Nguyen on its behalf, which note is dated February 22, 2012, payable to Robert "Bob" Najor, in the amount of One-Hundred Thousand Dollars ($100,000), plus contractual interest of Six Percent (6%) per Six (6) month term, equaling Six-Thousand Dollars ($6,000), or Twelve Percent (12%) per annum, equaling Twelve-Thousand ($12,000) from February 22, 2012, plus all sums due under the Promissory Note, including but not limited to attorney's fees, plus all costs of these proceedings as detailed hereinafter. The Payment was to be made in full in one (1) installment of One-Hundred and Six Thousand Dollars (106,000) Six (6) Months from the date of the Promissory Note, more specifically on August 22, 2012.

8.

PCC is in default of the note and has failed to make payment of the installment due since August 22, 2012, the date of default, and accordingly, making said note immediately due and payable, in the amount of $106,000.00 , plus accrued interest and including but not limited to attorney's fees, plus all costs of these proceedings as detailed hereinafter.

9.

Plaintiff attaches hereto and makes a part hereof a copy of the original Promissory Note, marked **Exhibit "A"** for identification.

10.

No payment has been made upon the Promissory Note. The Promissory Note remains in default.

11.

Plaintiff Mr. Najor is entitled to a judgment in his for against PCC, and for reasons stated herein after for a judgment against Mr. Nguyen *in solido*.

12.

Please take notice that this debt is being collected pursuant to the Fair Debt Collection Practices Act, 15 U. S. C. § 1692, et seq. Any information obtained will be used for that purpose.

13.

All allegations of the preceding paragraphs are re-alleged herein as if copied *in extenso*.

**ALLEGATIONS AS TO THE REMAINING MERITS**

14.

Through PCC, Mr. Nguyen owned and operated the soil and clay excavation site commonly known as "The Myrtle Prove Pit" ("MGP"). The soil and clay from the Myrtle Grove Pit would be sold to the construction industry for foundation construction and providing soils to the Army Corps of Engineers levee projects.

15.

In the late fall of 2011, during November, Mr. Nguyen contacted Mr. Najor for the purpose of Mr. Najor to manage and operate MGP. The meeting occurred at Mr. Nguyen's office in New Orleans with Mr. Najor, Mr. Josh Davlin, and Mr. Kenny Payne, members and/or employees of Fortress Group USA, LLC ("Fortress"), a mining and construction materials provider whose operations included Southeastern Louisiana and Southern Mississippi attending. Mr. Nguyen suggested that they work together to figure out a way to operate his pit, the MGP.

16.

This initial meeting was followed about a week later with a second meeting being held in December at The Scandurro Law Firm's conference room. Mr. Nguyen, Mr. Najor, Mr. Josh Davlin, and Mr. Kenny Payne were in attendance at this second meeting. Mr. Nguyen said Keiwit Corporation (a Fortune 500 construction, mining, and engineering company) proposed giving him $600,000 upfront for operations, and if Fortress could meet their proposal, Nguyen would allow Fortress to operate the Myrtle Grove Pit. Fortress would not match Keiwit's proposal and declined Nguyen's offer. Then Nguyen suggested Fortress submit a counter proposal to which Fortress did, but the proposal was declined by Mr. Nguyen.

17.

After Mr. Nguyen's rejection of the Fortress proposal, Mr. Nguyen phoned Mr. Najor and expressed a desire to work with Mr. Najor, not Fortress, exclusively. He stated that he did not like Mr. Najor's partners. Mr. Najor would be free to work with his partners as long as Nguyen did not have to interface with them. Mr. Najor and Mr. Kenny Payne met with Mr. Nguyen who stated he wanted to include them in the structure of a company to operate the Pit. Mr. Nguyen gave Najor a verbal commitment without upfront money required to manage and operate the pit. Various meetings and phone calls followed as they attempted to nail down the specifics of the

proposed operations. On one call, Nguyen asked what Mr. Najor's relationship was with Mr. Kenny Payne to which Mr. Najor responded that "Kenny" was an honest and loyal associate.

18.

Mr. Nguyen expressed plans to structure the company, verbally stating that Mr. Najor has exclusive rights to represent the MG Pit as "vice-chairman". Mr. Najor was to be named "Point of Contact" with the Army Corps of Engineers. Mr. Nguyen instructed Mr. Kenny Payne to refer clients to Mr. Najor for answers to any pit related questions and instructed Mr. Najor not to contact Kiewit Corporation.

19.

In January 2012, a Mr. Nguyen, Mr. Najor and Mr. Payne met at Mr. Nguyen's New Orleans office where he outlined the structure of the company involving himself, Mr. Najor, and Mr. Payne. Mr. Nguyen and Mr. Najor were both partners for the entire operation. Mr. Najor would be the operator and direct manager (Vice President) and handle any and all negotiations with the pit, MGP. Mr. Najor was to be the Point of Contact for the Army Corps of Engineers. An Alabama company related to Mr. Najor, Advance Construction, was to perform the mining at MGP. Mr. Nguyen was to be the President and person to provide financing from the proceeds of his government lawsuit settlement (an unrelated case involving remuneration for clay taken from his pit immediately after Hurricane Katrina). Mr. Nguyen stated he would have his attorney prepare the necessary paperwork.

20.

After another meeting, Mr. Najor requested the written legal authority to represent MGP. Mr. Nguyen took some weeks in providing this document which requested $100,000.00 for six months in order to pay attorneys and other obligations related for his government lawsuit which

would help facilitate the financing for their operation (based on Nguyen's cash shortfall). This money was based on Nguyen's trust "in Mr. Najor to do the right thing with the pit and 'make us money.'" "We are partners," Mr. Nguyen said. As it were, Mr. Nguyen wished to see Mr. Najor's trust reflected in cash.

21.

Several meetings occurred during the next months filled with discussions of the Plaquemines Parish permit, updating MGP governmental permits to operate, Plaquemines Clay Co., LLC (the new company or existing company with new structure), paperwork regarding Mr. Najor' position, contractors to be contacted, potential contractors for the back levee work and the status of the loan requested.

22.

At a meeting on February 22, 2012, at Mr. Nguyen's home, Mr. Nguyen gave Mr. Najor a promissory note for $100,000.00, payable in six months lump sum at six (6) percent interest and a due August 22, 2012. See **Exhibit "A."** On March 7, 2012, per Mr. Najor's instructions, Advance Construction Services, Inc., an Alabama company owned by Mr. Najor's family, issued a bank transfer of funds to Plaquemines Clay Co., LLC - Whitney National Bank, New Orleans, for the interest of Plaquemines Clay Co., LLC.

23.

After several months passed, in July, 2012, Mr. Najor again requested the written agreement evidencing Mr. Najor's authority to represent MGP. As would be expected, customers wanted proof of Mr. Najor's representation and authority.

24.

On August 2, 2012, Mr. Nguyen gave Mr. Najor a letter of authority documenting the points that had been agreed to the previous year: Mr. Najor's joint venture with Mr. Nguyen, operator of the pit, etc. *See* Notarized Letter Agreement, attached hereto as **Exhibit "B"**. He also stated that he was going to instruct his attorney to accept the Government settlement and use the money to pay back the loan in order to commence MG pit development.

25.

On August 12, 2012, Hurricane Isaac hit Plaquemines Parish. This hurricane stopped any development work at the MGP.

26.

Thereafter during September to October 2012, Mr. Najor updated the inspections and other works to have the permits issued for MGP. Mr. Nguyen requested that Mr. Najor proceed with scheduling whomever he wished to begin operation at and for MGP. Following Mr. Nguyen's express instructions, Mr. Najor requested that Mr. Doyle Traxler's company to begin opening the pit process for the MGP. Mr. Doyle met Mr. Najor and Mr. Nguyen at MGP. Mr. Nguyen walked the Pit with Mr. Najor and Mr. Doyle, and showed Mr. Doyle the property limits that needed to be inspected.

27.

Mr. Nguyen at all material times represented himself as the owner and the controlling manager of PCC and its assets, namely the MGP.

28.

That same day, Mr. Najor met Nguyen's son, Kai Nguyen, the same day and at the request of Mr. Hai Nguyen explained what he (Mr. Najor) had going on in the Pit. Mr. Kai

Nguyen was in agreement with Mr. Najor's plans. As Mr. Najor was leaving the MGP that day, he met drillers coming into the pit at MGP.

29.

Asking why drillers were in the MGP, Mr. Hai Nguyen explained to Mr. Najor that some of the borings were not complete and additional ones were needed. Mr. Kai Nguyen said that the drillers were there to complete the borings at his request. This seemed strange to Mr. Najor, because Mr. Najor explained to both Mr. Nguyens that he was already quoting dirt to come from MGP for a levee repair job for Hard Rock Construction and planned to pay Mr. Hai Nguyen $3.00 royalty, and that the testing was complete. Not to worry, Mr. Hai Nguyen explained that the settlement money from the other litigation was due any day.

30.

To clarify the situation, Mr. Nguyen agreed to call his son later. While Mr. Najor was present, Mr. Nguyen explained to his son that Mr. Najor would be mobilizing and starting excavation and processing at MGP. Mr. Hai Nguyen requested that his son assist Mr. Najor in anything he needed. A meeting was scheduled the next day at MGP with his son to go over certain logistics regarding the start-up.

31.

On the next day, Mr. Kenny Payne and Mr. Najor met with Nguyen's son, Kai, and Mr. Hai Nguyen's daughter (and sister of Kai) and her son. Mr. Najor explained that the parish permit application would need to be submitted. The daughter wanted to know information regarding excavation, processing, and stockpiling operations. She further explained that Mr. Najor should not contact any potential buyers, and she would let Mr. Najor know the next if his services were needed.

32.

After leaving MGP, Mr. Najor had a scheduled meeting with "Red" to discuss possible employment in opening operations for the MGP. After much discussion, Red stated he could not come to work because he had accepted a job with Mark Fontenot, who was undercontract from Mr. Nguyen to operate the MGP. They had been instructed to mobilize within two weeks.

33.

The very next day, Mr. Hai Nguyen's daughter phoned Mr. Najor. She was extremely upset with Mr. Najor and told him he had no rights to the Pit. She admitted that the family had confusion with the operation of the MGP and there were problems for her family. She became quite irritated and screamed at Mr. Najor. Mr. Najor told her that he had been given authority by her father and owner of the MGP. She told him to stay out of the Pit and again stated that Mr. Najor had no rights to the Pit. This was the first time that Mr. Najor learned the full extent to which that there was a "family disagreement" as to the operation of the MGP.

34.

On a number of occasions, Mr. Najor tried to contact Mr. Hai Nguyen,to meet and clarify his position with PCC, and to collect his money. Mr. Najor was able to contact Mr. Nguyen only three or four times by phone and had only one meeting. Mr. Nguyen always gave a timeframe of another ten (10) days "to pay", and always gave an excuse as to why he could not meet, "'he was out of town' or 'his sister came to visit and he had a house full of guests' or 'he was going to a funeral' or 'his lawyer stole his money.'" Despite the promises of payment by Mr. Nguyen, no payment was made.

35.

Through Mr. Najor's contacts with other contractors in the industry, he learned that Mr. Nguyen had requested proposals from other contractors to operate the MGP, while Mr. Najor was getting permits and updating permits with the intent to operate the MGP.

36.

Mr. Kenny Payne spoke with Mr. Nguyen several times afterwards in efforts to help Mr. Najor collect the moneys due under the promissory note. In those conversations, Mr. Nguyen told Mr. Payne that he had received the settlement money from which Mr. Nguyen was to pay Mr. Najor. However, Mr. Nguyen told Mr. Kenny Payne that his attorney had stolen money and he had yet to collect the money from his attorney.

37.

Mr. Nguyen became increasingly difficult to contact. Finally, Cheryl Najor, in her official capacity as President of Advance Construction, contacted Mr. Nguyen. Mr. Nguyen told Cheryl Najor that he would be repaying the loan within the week. Again, Mr. Nguyen did not keep this promise to repay the money.

38.

PCC and Mr. Nguyen acted in bad faith, which is demonstrated by the following:

(a) Over an extended period of time Mr. Najor agreed to perform his obligations, which he did, but Mr. Nguyen continued to ask and take more time and give excuses for his own failure to perform.

(b) Mr. Nguyen made as a condition of doing business that he not involve his other business associates such that it is now apparent that Mr. Nguyen attempted to isolate Mr. Najor from having additional witnesses.

(c) Mr. Nguyen continued to ask for Mr. Najor advice and consultation about Mr. Najor's developed processes, Mr. Najor's trade assets for Mr. Nguyen's personal benefit (i.e., the profit he was to gain from MGP).

(d) Mr. Nguyen asked for and agreed to Mr. Najor to get MGP operational.

(e) Mr. Najor worked and performed, but was never told to stop working by Mr. Nguyen.

(f) Mr. Nguyen told Mr. Najor that he was the only owner and manager and of PCC. This fact is confirmed by the Louisiana Secretary of State's website.

(g) Mr. Nguyen brings Mr. Najor to the MBP and continues promote the idea that Mr. Najor is in charge of PCC and that Mr. Najor is to begin full operations at the MGP. At this meeting, there begins a sudden shift of the plan, which Mr. Najor was never fully informed was about to happen with a new operator and other of Mr. Nguyen's family members being involved.

(h) Very next day Mr. Najor is told not to return to MGP or PCC, not by Mr. Nguyen, but by Mr. Nguyen's daughter who is acting on behalf of Mr. Nguyen.

(i) PCC, acting through Mr. Nguyen, never makes the only required payment of principal and interest, evidencing a first payment default.

(j) It is only after Mr. Najor is told to never return to PCC or MGP, and immediately, finds out that family had been going behind his back and setting up to use other competitors and Mr. Najor operational practices and guidelines for pit management.

(k) Mr. Nguyen's promises to repay are not ever met. In fact no payment is made or about to be made by Mr. Nguyen or PCC, acting by and at the direction of Mr. Nguyen.

(l) Mr. Nguyen had his son Kai Nguyen appointed "Point of Contact" with the Army Corps of Engineers

(m) Mr. Nguyen's bad faith may be by any fact later discovered.

(n) Mr. Nguyen's bad faith may be by any fact proved at trial.

**Specific Performance**

39.

Pursuant to La. C.C. art 1986, Mr. Najor demands specific performance to be named operational manager of the MGP and damages for Mr. Nguyen's and PCC's breach of the obligations to Mr. Najor. Mr. Najor was to be an operational manager of MGP and PCC in particular as part of a long term deal with PCC and Mr. Nguyen.

40.

Mr. Najor was to be named operations manager of MGP and PCC, in part, to protect the $100,000 he advanced to Mr. Nguyen and PCC and the interest he was owed

41.

Mr. Najor was to be named operations manager of MGP and PCC, in part, to be a 50/50 spilt of the profits from PCC and the MGP operations under a joint venture agreement with Mr. Nguyen.

42.

Mr. Najor respectfully requests the that Court order PCC to name Mr. Najor operations manager with the title of and the authority to conduct operations of PCC and MGP and to be named "Point of Contact" for the Army Corps of Engineers.

**Damages**

43.

Pursant to Louisiana law and La. C.C. art. 1997, Mr. Nguyen and PCC are in bad faith are liable *in solido* for all the damages, foreseeable or not, that are a direct consequence of his and its failure to perform.

44.

Mr. Najor seeks all damages from PCC and Mr. Nguyen for the following:

(a) The $100, 000 principal Mr. Najor loaned to PCC.

(b) Interest on the $100,000 at 12% per annum simple interest until the indebtedness is paid.

(c) All profit of PCC, which it made or should have made.

(d) Mr.Najor's lost time and expenses for getting the MGP operational.

(e) Any amount of damage later discovered. And

(f) Any amounts later proved at trial.

45.

As a result of Borrowers' default under the Promissory Note and the allegations contained in this Complaint, the Defendants are liable in solido for the indebtedness due and outstanding under the Promissory Note and all damages owed to Mr. Najor.

**PRAYER**

**WHEREFORE,** Robert "Bob" Najor prays that after due legal proceedings are had, and there by judgment rendered in favor of Robert "Bob" Najor, and against Plaquemines Clay Co., LLC and Hai Nguyen *in solido:*

(a) The principal amount of One-Hundred Thousand Dollars ($100,000);

(b) PLUS accrued interest, including, and without limitation, attorney's fees and expenses, and all court costs incurred;

(c) PLUS all damages for the breach of contract obligation by Plaquemines Clay Co. and Mr. Najor.

(d) PLUS Respectfully request specific performance to name Mr. Najor as "operations manager" for Plaquemines Clay Co., LLC.

(e) PLUS all other general and equitable relief as may be deemed appropriate by this Honorable Court.

DATED: 7/5/2013

Respectfully submitted:

**Weinstein Law Firm, LLC.**

**Pini Aaron Weinstein**
La. Bar No.: 31561
416 Lafayette Street
Gretna, LA 70053
Telephone: (504) 831-0994
Facsimile: (504) 831-0994
*Counsel for Plaintiff:*
*Robert "Bob" Najor*

**PLEASE SERVE THE DEFENDANTS, PERSONALLY:**

PLAQUEMINES CLAY CO., LLC
through its' Agent for Service of Process
Mr. Hai Nguyen
13000 Chef Menteur Hwy.

New Orleans, LA 70129

MR. HAI NGUYEN
at his Place of Business
13000 Chef Menteur Hwy.
New Orleans, LA 70129