# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT NAJOR | CIVIL ACTION |
| | NO: 13-5000 |
| VERSUS | C/W 16-15412 |
| PLAQUEMINES CLAY CO., LLC, ET AL. | SECTION: "J" (2) |

## ORDER AND REASONS

Before the Court is a *Motion to Dismiss* **(Rec. Doc. 130)** filed by Defendant, Huyen T. Nguyen, in her capacity as Trustee of the Nguyen Family Trust ("Defendant Trustee"). Plaintiff, Robert Najor, opposes the motion (Rec. Doc. 131). Defendant Trustee filed a reply (Rec. Doc. 137). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED IN PART AND DENIED IN PART**.

## FACTS AND PROCEDURAL HISTORY

This litigation derives from a default judgment rendered in this Court on November 9, 2017, against Hai Nguyen ("Judgment Debtor") and the Nguyen Family Trust ("the Trust") by and in favor of Robert Najor ("Plaintiff"). (Rec. Doc. 80).

1

On April 5, 2013, Plaintiff instituted an action against Judgment Debtor and Plaquemines Clay Co., LLC to recover payment owed on a promissory note[1] dated February 22, 2012. (Rec. Doc. 1, at 3). This Court entered a default judgment in favor of Plaintiff and against Judgment Debtor and Plaquemines Clay Co., LLC on March 14, 2014. (Rec. Doc. 23). Thereafter, Plaintiff filed suit against Judgment Debtor and the Trustee of the Trust, and the case was consolidated with the action instituted on April 5, 2013. (*See* Rec. Doc. 43).[2]

On June 16, 2017, default was entered against Judgment Debtor and Defendant Trustee. (Rec. Doc. 69). This Court held an evidentiary hearing on October 18, 2017. (Rec. Doc. 75). Plaintiff's counsel submitted a Trial Exhibit containing, among other things, a copy of the purported cash sale of property located at 1725 Lakeshore Drive in New Orleans, Louisiana ("the Property") to the Trust. (Rec. Doc. 77, at 1). The cash sale specifically names Huyen Nguyen as the Trustee of the Trust and appears to list her mailing address as that of the Property where service upon Defendant Trustee was executed. (*See* Rec. Doc. 77, at 1).

On November 9, 2017, this Court entered a judgment against Judgment Debtor and the Trust. (Rec. Doc. 80). On October 5, 2018, this Court granted Defendant Trustee's motion for a new trial. (*See* Rec. Docs. 84, 94). This Court subsequently granted Defendant Trustee's *Motion to Alter, Clarify or Amend Judgment* (Rec. Doc. 98), concluding that the Court's October 5, 2018 Order had the effect of granting a

---

[1] The promissory note was in the amount of $100,000.00, or 12 percent per annum, equaling $12,000.00 from February 22, 2012, plus all sums due under the promissory note. (**Rec. Doc. 1, at 3**).
[2] The original case number was 16-15412.

new trial on all issues and entirely setting aside the Court's November 9, 2017 Judgment. (*See* Rec. Doc. 139).

## PARTIES' ARGUMENTS

### I. Defendant Trustee's Motion

Defendant Trustee moves this Court to dismiss Plaintiff's first, fourth, sixth, and seventh claims to relief pursuant to Rule 12(b)(6). (Rec. Doc. 130 at 1). First, Defendant Trustee asserts that Plaintiff's revocatory action seeking to annul the transfer of the Property from Judgment Debtor to the Trust is perempted and must be dismissed. (Rec. Doc. 130-1 at 6). Specifically, Defendant Trustee argues that the applicable three-year peremptive period began running when the Property was transferred to the Trust on December 4, 2002 and expired on December 4, 2005. (Rec. Doc. 130-1 at 7). Given that Plaintiff did not file the above-captioned action until well after three years from the relevant date, Defendant Trustee asserts that dismissal is required. (Rec. Doc. 130-1 at 6). Defendant Trustee notes that Plaintiff's attempt to circumvent prescription or peremption by alleging that the transfer of the Property was fraudulent fails because his "fraud allegations wholly lack any kind of factual support in contravention of Rule 9." (Rec. Doc. 130-1 at 7). Moreover, Defendant Trustee contends that Plaintiff's reliance on the theory of fraudulent transfer "is not the kind of fraud contemplated to permit [Plaintiff] to avoid the three-year peremptive period of article 2041." (Rec. Doc. 130-1 at 8). Defendant Trustee also argues that even if Plaintiff had alleged the proper type of fraud to allow him to avoid the peremptive period, "the 2013 inclusion of the fraud exemption to article 2041 does

3

not apply retroactively to allow [Plaintiff] to bring his action." (Rec. Doc. 130-1 at 8). Defendant Trustee argues that the oblique action asserted in Plaintiff's amended complaint must also be dismissed as perempted because it is subject to the same prescriptive and peremptive period as the revocatory action. (Rec. Doc. 130-1 at 9).

Defendant Trustee next argues that Plaintiff cannot advance on a theory of fraudulent transfer of the Property to the Trust because (1) Plaintiff has not alleged that he is now or has ever been a judgment creditor of the Trust, and (2) Plaintiff's complaint admits by its terms that Plaintiff was not a creditor of Judgment Debtor at the time of the 2002 transfer of the Property. (Rec. Doc. 130-1 at 9). Specifically, Defendant Trustee emphasizes that the promissory note that formed the basis of the 2013 action against Judgment Debtor, whereby Plaintiff became a creditor of Judgment Debtor, was not even executed until nearly ten years after the Property was transferred to the Trust. (Rec. Doc. 130-1 at 10). Based on the foregoing, Defendant Trustee argues that Plaintiff's first claim to relief should be dismissed with prejudice. (Rec. Doc. 130-1 at 10).

Additionally, Defendant Trustee asserts that Plaintiff's action to declare the 2002 transfer of the Property to the Trust a nullity and a simulation is prescribed and should be dismissed. (Rec. Doc. 130-1 at 10). Defendant Trustee asserts that Plaintiff's amended complaint offers no facts to support the allegation that the transfer was illicit or immoral with respect to Plaintiff given the fact that Plaintiff was neither a judgment creditor nor an unsecured creditor of Judgment Debtor or the Trust at the time of the transfer. (Rec. Doc. 130-1 at 10). Defendant Trustee argues

4

that Plaintiff's allegation that there was no consideration for the transfer implicates the law of relative nullity, though Plaintiff has not advanced any assertion in his amended complaint to invalidate the transfer on that basis. (Rec. Doc. 130-1 at 11, 12). However, Defendant Trustee asserts that even if Plaintiff had alleged circumstances to nullify the transfer of the Property based on relative nullity, Plaintiff's failure to file suit within five years of the 2002 transfer renders the claim untimely. (Rec. Doc. 130-1 at 13).

While Defendant Trustee contends that any allegations that the transfer was a simulation are not supported by factual assertions, Defendant Trustee argues that even if Plaintiff were successful in proving a simulation because no consideration was paid, the transfer would constitute a donation from Judgment Debtor to the Trust. (Rec. Doc. 130-1 at 13, 14). Defendant Trustee notes that an action to recover a portion of the Property on the basis that it constitutes an excessive donation is subject to a five-year prescriptive period that expired in December of 2007. (Rec. Doc. 130-1 at 14). Thus, any attack on a donation of the Property would be prescribed. (Rec. Doc. 130-1 at 14).

Finally, Defendant Trustee argues that Plaintiff's claims for attorney's fees and costs should be dismissed. (Rec. Doc. 130-1 at 15). Defendant Trustee first argues that the amended complaint cites no law or support and fails to "give fair notice to the factual circumstances by which [the] claim arises." (Rec. Doc. 130-1 at 15). Additionally, Defendant Trustee contends that there is no breach of a conventional

5

obligation presently before the Court to support attorneys' fees and costs based on bad faith discharge of duties under article 1997. (Rec. Doc. 130-1 at 15).

## II. Plaintiff's Opposition

Plaintiff raises several arguments in opposition. (Rec. Doc. 131-1). First, Plaintiff asserts that actual fraud—where a debtor intentionally transfers assets to avoid a creditor's claims— always voids asset transfers. (Rec. Doc. 131-1 at 3, 4). Plaintiff argues that because Judgment Creditor acted with "actual fraudulent intent" when he transferred the Property to the Trust in 2002, the transfer is void *ab initio* as to creditors. (Rec. Doc. 131-1 at 4). Plaintiff goes on to note that under Louisiana law, "[t]ransfers of real estate, property, made for the purpose of defrauding creditors have always been held to have an unlawful cause and constitute an absolute nullity. (Rec. Doc. 131-1 at 4, 5). Plaintiff acknowledges that a revocatory action is subject to a three-year peremptive period but argues that the fraud provision contained in amended article 2041 applies retroactively. (Rec. Doc. 131-1 at 6, 7).[3]

Plaintiff next argues that regardless of whether the 2002 transfer of the Property constitutes an absolute or a relative simulation, his complaint and its allegations are timely as pleaded. (Rec. Doc. 131-1 at 9). Without citing to authority, Plaintiff asserts that simulation is a fraud on creditors. (Rec. Doc. 131-1 at 8). Plaintiff appears to argue that the 2002 transfer is an absolute simulation with no prescriptive period because Judgment Debtor retained use and possession of the

---

[3] Nevertheless, Plaintiff concludes by noting that he "has demonstrated that his complaint has stated a valid claim for *prospective* application of the amended [article] 2041." (Rec. Doc. 131-1 at 8) (emphasis added).

Property. (Rec. Doc. 131-1 at 8, 9). However, even if the transfer is only a relative simulation, Plaintiff asserts that his action is within the five-year prescriptive period referenced by Defendant Trustee because he discovered the fraud (i.e., "the simulated sale") on May 18, 2016 and filed the instant litigation on October 11, 2016. (Rec. Doc. 131-1 at 9).

With respect to his oblique action, Plaintiff simply points the Court to the Magistrate Judge's Order and Reasons on Plaintiff's opposed motion to file an amended complaint. (Rec. Doc. 131-1 at 10). Specifically, the Magistrate Judge found that because Plaintiff alleges fraud, the oblique action asserted in Plaintiff's amended complaint "does not appear" to be perempted under the current version of article 2041. (*See* Rec. Doc. 127 at 9, 10). However, the Magistrate noted that "[n]either party has addressed whether the timing of the amendment resulting in the current version of article 2041 affects the peremption argument, and I will not address it here." (*See* Rec. Doc. 127 at 10).

Finally, Plaintiff appears to argue that Defendant Trustee's "request to continue to litigate" and to defend Judgment Debtor's "admitted fraud" instead of simply paying or compromising on the debt at issue renders her liable to Plaintiff for attorneys' fees. (Rec. Doc. 131-1 at 10). Given that the instant litigation arises out of a contractual obligation between Plaintiff and Judgment Debtor, Plaintiff asserts that he is entitled to attorney's fees. (Rec. Doc. 131-1 at 11).

## III. Defendant Trustee's Reply

Defendant Trustee raises four arguments in reply. (Rec. Doc. 137). First, Defendant Trustee contends that Plaintiff's opposition to the instant motion "generally boils down to his conclusion that *merely alleging fraud* is enough to circumvent prescription or peremption and prevail, regardless of the law." (Rec. Doc. 137 at 1). Defendant Trustee emphasizes Plaintiff's failure to review and rebut the actual law of fraudulent conveyances in Louisiana and the peremptive period applicable to such claims, as well as his failure to offer any cognizable theory as to how Plaintiff's claims survive the instant motion. (Rec. Doc. 137 at 2). Defendant Trustee also notes that Plaintiff's belief that the filing of an amended complaint establishes facts conclusively is misplaced. (Rec. Doc. 137 at 2).

Defendant Trustee next argues that (1) the fraud exception carved out in article 2041 applies only from 2013 forward and (2) Plaintiff's claims relying on his theory of fraudulent transfer fail because he has not alleged that he was a debtor or creditor of Judgment Debtor or the Trust at the time of the 2002 transfer. (Rec. Doc. 137 at 2-4). Accordingly, Plaintiff has no valid argument that the 2002 transfer was an attempt to defraud him. (Rec. Doc. 137 at 2-3). Defendant Trustee concludes that Plaintiff's revocatory and oblique actions, as well as his actions seeking to declare a fraudulent transfer, were perempted under Louisiana law on December 4, 2005— three years from the date the Property was allegedly transferred to the Trust. (Rec. Doc. 137 at 4).

Additionally, Defendant Trustee asserts that Plaintiff's action to declare the transfer to be an absolute or relative simulation is insufficient to survive this motion to dismiss. (Rec. Doc. 137 at 4). Specifically, Defendant Trustee argues that because Plaintiff has not alleged that he was a creditor of Judgment Debtor or the Trust at the time of the 2002 transfer, his assertion that the transfer was absolutely null because it was illicit or immoral fails. (Rec. Doc. 137 at 4). Defendant Trustee also argues that even if Plaintiff had advanced on a theory of relative nullity instead, the action prescribed five years from the date the transfer was recorded in the conveyance records, which occurred in 2002. (Rec. Doc. 137 at 5). Defendant Trustee emphasizes that the public records doctrine requires only constructive, not actual, knowledge. (Rec. Doc. 137 at 5).

Finally, Defendant Trustee argues that Plaintiff has failed to allege facts to show his entitlement to attorney's fees and costs. (Rec. Doc. 137 at 5). Defendant Trustee emphasizes that Plaintiff's vague allegation of the breach of a contractual obligation is insufficient to show facts that would establish the liability of either defendant. (Rec. Doc. 137 at 5).

## **LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S.

9

336, 346 (2005) (internal citations omitted). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

## **DISCUSSION**

### I. Plaintiff's First and Sixth Claims to Relief

Plaintiff's amended complaint asserts a revocatory and an oblique action against Defendant Trustee. Codified in Louisiana Civil Code article 2036, the revocatory action provides that "[a]n obligee has a right to annul an act of the obligor,

10

or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency.[4] Accordingly, a creditor filing a revocatory action with respect to a debtor's fraudulent transfer must show: (1) that the disputed transaction was made or effected *after* the right of the obligee arose; and (2) that the disputed transfer caused or increased the obligor's insolvency. *Traina v. Whitney Nat'l Bank*, 109 F.3d 244, 246 (5th Cir. 1997). Finally, the creditor must file suit within at least one year of learning of the act that the creditor wishes to annul, but never more than three years from the date of the act or the result of the act unless fraud is alleged.

In the instant case, the parties do not dispute that the 2002 transfer of the Property caused or increased Judgment Debtor's insolvency. However, Plaintiff has failed to allege any facts to suggest that the 2002 transfer occurred after Plaintiff's rights arose. Plaintiff alleges that Judgment Debtor transferred the Property to the Trust in 2002. However, the record reflects that the promissory note that formed the basis of Plaintiff's 2013 action against Judgment Debtor was not executed until nearly ten years later. Accordingly, Plaintiff has failed to plead the necessary elements to revoke the transfer under Article 2036, and his revocatory action must be dismissed.

Louisiana's oblique action is governed by Civil Code article 2044, which provides that "[i]f an obligor causes or increases his insolvency by failing to exercise a right, the obligee may exercise it himself, unless the right is strictly personal to the

---

[4] Article 2041 governs the prescription of revocatory actions.

11

obligor." An obligee asserting an oblique action must join in the suit his obligor and the third person against whom the right is asserted. La. Civ. Code art. 2044. The language of the article makes clear that an insolvent obligor must fail to act before an obligee may assert an oblique action. Article 2041 requires the obligee to file suit "within one year from the time he learned or should have learned of the act, or the result of the failure to act, of the obligor that the obligee seeks to annul." The obligee is precluded entirely from bringing his action after three years from the date of the act or result. La. Civ. Code art. 2041. However, "[t]he three year period provided in this Article shall not apply in cases of fraud." La. Civ. Code art. 2041.

Here, Defendant Trustee does not dispute that Judgment Debtor failed to exercise a right and that failure caused or increased Judgment Debtor's insolvency. Instead, Defendant Trustee argues that Plaintiff's oblique action must be dismissed as perempted because the fraud exception is not applicable. In order to state a claim for fraud under Louisiana law, a plaintiff must allege a misrepresentation or suppression of the truth that was made with the intention to obtain an unjust advantage for one party or cause a loss or inconvenience to the other. La. Civ. Code art. 1953. "Fraud may also result from silence or inaction." *Id.* A fraud claim filed in federal court is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Williams v. WMX Technologies*, Inc., 112 F.3d 175, 177 (5th Cir.1997). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements

contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 112 F.3d at 177. A plaintiff must specifically allege what the speaker obtained by making the fraudulent statements. *Id*. "Mere rote conclusions ... fail to satisfy the requirements of Rule 9(b)." *Tarica v. McDermott Int'l, Inc.*, 2000 WL 1346895 at *6 (E.D. La. 2000). The particularity required by Rule 9(b) differs with the facts of each individual case. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In the context of allegations of fraudulent intent, Rule 9(b) provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." However, the Fifth Circuit requires "more than a simple allegation that a defendant had fraudulent intent." *Id*. at 1068. Rather, a plaintiff must adequately plead fraudulent intent by alleging "specific facts that support an inference of fraud." *Id*. This can be done by alleging facts that demonstrate that the defendant had a motive to commit fraud or by "identifying circumstances that indicate conscious behavior on the part of the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Id*.

Here, Plaintiff's amended complaint contains conclusory allegations that Judgment Debtor transferred the Property to the Trust in 2002 "to hinder, delay, and defraud" Judgment Debtor's personal creditors. (*See* Rec. Doc. 128 at 10). Plaintiff alleges that the transfer was done "without the intent for legitimate estate planning purposes" and was instead intended to put the property "beyond the reach of [Judgment Debtor's] creditors." (Rec. Doc. 128 at 11). Plaintiff, however, fails to allege

13

in his amended complaint or his opposition any facts to support this assertion. Notwithstanding that the record reflects that Plaintiff did not become a creditor of Judgment Debtor until 2012 at the earliest, Plaintiff fails to specify any allegedly fraudulent statements, identify the individual or individuals who made such statements, state when and where the statements were made, or explain why the statements were fraudulent. Instead, Plaintiff references the common law's fraudulent conveyance law generally without explaining why it should be applied in this case. Moreover, Plaintiff's amended complaint references "the doctrine of continuing fraud and/or continuing concealment" without citing to any authority in the amended complaint or the opposition indicating that this is the type of fraud contemplated by article 2041. Accordingly, Plaintiff's amended complaint fails to plead fraud with sufficient particularity, and his oblique action is perempted because more than three years have passed since the Property was transferred to the Trust in 2002. Based on the foregoing, Plaintiff's first and sixth claims to relief are subject to dismissal.

## II. Plaintiff's Fourth Claim to Relief

Plaintiff's fourth claim to relief in his amended complaint asks the Court to declare the 2002 transfer to be "a simulation, a nullity, and/or an absolute nullity." (*See* Rec. Doc. 128 at 20). Where the requirements for formation have not been met, a contract is null. La. Civ. Code art. 2029. "A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral." La. Civ. Code art. 2030. An action to annul an absolutely null contract does not

14

prescribe. La. Civ. Code art. 2032. In contrast, a relatively null contract is one that "violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made." La. Civ. Code art. 2031. Nevertheless, "[r]elative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative." *Id*. "Action of annulment of a relatively null contract must be brought within five years from the time the ground for nullity … was discovered, as in the case of … fraud." La. Civ. Code art. 2032. Regarding the effects of a null contract, the Civil Code provides in pertinent part:

> An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages."

La. Civ. Code art. 2033.

Pursuant to Civil Code article 2025, "[a] contract is a simulation when, by mutual agreement, it does not express the true intent of the parties." A simulation is deemed absolute "when the parties intend that their contract shall produce no effects between them." La. Civ. Code art. 2026. Thus, an absolute simulation has no effects between the parties. *Id*. In contrast, "[a] simulation is relative when the parties intend that their contract shall produce effects between them though different from those recited in their contract." La. Civ. Code art. 2027. A relative simulation, therefore, "produces between the parties the effects they intended if all requirements for those effects have been met." *Id*.

15

In the instant case, Plaintiff's amended complaint alleges that the 2002 transfer of the Property to the Trust was a "sham" and/or was "for the illicit and immoral purpose of concealing [Judgment Debtor's] valuable rights and interests in [the Property] and attempting to put them beyond the reach of creditors (such as [Plaintiff])." (*See* Rec. Doc. 128 at 18). Given Plaintiff's reference to an illicit and immoral purpose, it appears that Plaintiff is asserting that the transfer constitutes an absolute nullity, which is imprescriptible. While Defendant Trustee acknowledges that a judgment debtor's transfer of assets beyond the reach of his judgment creditor would constitute an illicit or immoral object, Defendant Trustee emphasizes that the 2002 transfer is not an absolute nullity because Plaintiff has failed to allege facts to show that Judgment Debtor transferred the Property in order to evade his creditors. Specifically, (1) Plaintiff was neither an unsecured nor a judgment creditor of Judgment Debtor at the time of the transfer and (2) Plaintiff has identified no other creditors of Judgment Debtor at the time of the transfer. This Court agrees. In light of Plaintiff's failure to allege facts to support his legal conclusion that the 2002 transfer was an absolute nullity under article 2030, this claim must be dismissed.

The next issue the Court must resolve is whether Plaintiff's amended complaint alleges sufficient facts to show that the 2002 transfer is an absolute or a relative simulation. Plaintiff alleges that the 2002 transfer is a "non-transfer simulation," asserting that Judgment Debtor retained possession of the Property and neither Defendant Trustee nor the Trust paid the stated price of $600,000. (*See* Rec. Doc. 128 at 19). He asserts that "the Act of Sale and its related documents are [a]

16

simulation and represent the collusive effort of the Defendants, consisting of a visible act that is artificial, and a genuine expression of the parties' intent that is kept secret." (*See* Rec. Doc. 128, at 18-19). Considering Plaintiff's allegations that the 2002 transfer produced no effects between the parties, the Court finds that Plaintiff's amended complaint contains sufficient facts to survive dismissal of his claim that the 2002 transfer was an absolute simulation.

The Court likewise finds that the amended complaint is sufficient to survive dismissal of Plaintiff's claim that the 2002 transfer constitutes a relative simulation. With respect to whether Plaintiff's claim is prescribed, the parties agree that article 2032 governs the applicable prescriptive period. Specifically, Plaintiff's claim that the 2002 transfer was a relative simulation has prescribed unless he brought his action to annul the relative simulation within five years of the time the alleged fraud was discovered. Defendant Trustee asserts that the five-year period began running when the act of sale was recorded in the public records on December 16, 2002, asserting that "the date of recordation serves as the effective date to give notice to all third parties" because constructive knowledge is all that is required. (*See* Rec. Doc. 130-1 at 12). Plaintiff, however, contends that his action is timely because the clock did not begin running until he acquired actual knowledge of the simulated sale on May 18, 2016. (*See* Rec. Doc. 131-1 at 9). Neither party points the Court to authority that supports their assertions regarding the prescriptive period applicable in the context of a relative simulation. However, the First Circuit Court of Appeal—the only Louisiana court to have directly addressed the issue—has held that "[t]he

17

jurisprudence discussing prescription for claims of simulations has indicated that an action to establish the contract as a simulation does not prescribe." *Scott v. Sneed*, 50,954 (La. App. 2 Cir. 12/14/06), 210 So. 3d 872, 877 (rejecting defendant's contention that article 2032 governs the prescription of a claim of simulation where plaintiff is not seeking to nullify a *relatively* null contract because there is no allegation of lack of capacity or a vice of consent); *see also Scoggins v. Frederick*, 98-1814 (La. App. 1 Cir. 9/24/99), 744 So. 2d 676, 681, writ denied, 1999-3557 (La. 3/17/00), 756 So. 2d 1141 (holding that "the action to have a simulated sale declared a nullity never prescribes").

Similar to *Scott*, Plaintiff makes no allegation that the 2002 transfer should be annulled on the basis that it constitutes a relative nullity within the meaning of article 2031. Defendant Trustee does not contest this, noting that "Plaintiff has not advanced any assertion in his [amended complaint] to invalidate the transfer for relative nullity." (*See* Rec. Doc. 130-1 at 12). Rather, Plaintiff alleges that the transfer constitutes a simulated sale. Accordingly, the Court concludes that Plaintiff's action to have the transfer declared a simulation has not prescribed because it is imprescriptible under Louisiana law. The instant motion to dismiss Plaintiff's fourth claim to relief is granted with respect to Plaintiff's claim that the 2002 transfer constitutes an absolute nullity under article 2030, but it is denied regarding Plaintiff's claims that the transfer is an absolute or relative simulation.

### III. Plaintiff's Seventh Claim to Relief

Under Louisiana law, it is well-settled that attorney's fees may be recovered only when authorized by statute or contract. *See State, Dep't of Transp. & Dev. v. Williamson*, 597 So.2d 439 (La. 1992). Plaintiff's amended complaint does not reference any contractual basis for attorney's fees; nor does it incorporate any cause of action for which codal authority exists for the award of such fees. Similarly, in his memorandum in opposition to the motion to dismiss, Plaintiff cites no authority that would support the claim for attorney's fees. Accordingly, Plaintiff has failed to state a claim for attorney's fees upon which the requested relief may be granted, and Plaintiff's seventh claim to relief must be dismissed.

### CONCLUSION

Accordingly,

**IT IS ORDERED** that the motion to dismiss (Rec. Doc. 130) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's first, sixth, and seventh claims to relief are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that, with respect to Plaintiff's fourth claim to relief, Plaintiff's claim that the 2002 transfer was an absolute nullity under article 2030 is **DISMISSED** with prejudice. However, the Court retains jurisdiction over Plaintiff's claim that the 2002 transfer was a simulation.

New Orleans, Louisiana, this 15th day of April, 2019.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE